## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BRAHEEM HARTLEY**

*Plaintiff,*

v.

**DELAWARE COUNTY et al.,**

*Defendants.*

**Case No. 2:25-cv-03078-JDW**

## MEMORANDUM

In our federal system, federal courts do not sit above state courts. While they sometimes have overlapping jurisdiction, the remedy for a negative outcome in state court is an appeal in state court, not a lawsuit in federal court. To put some teeth into that principle, the *Rooker-Feldman* doctrine says that federal courts can't hear cases that state courts have decided if the effect of the federal court decision would to be reverse the state court's decision. That's why this Court lacks jurisdiction over Braheem Hartley's claims in this case.

Mr. Hartley seeks to challenge the outcome of a proceeding in the Pennsylvania Court Of Common Pleas, in which he sought to stop an upset sale of his home over delinquent taxes. The Common Pleas Court decided that the upset sale was appropriate and permitted it to proceed. Mr. Hartley asks for relief that would undo that decision, and I'm powerless to give it to him. I will therefore dismiss his claims in this case.

I.    **BACKGROUND**

A.    **Factual History**

1.    **The upset sale**

Mr. Hartley owned a home at 705 Carriage Circle in Upper Chichester, Pennsylvania, which is in Delaware County. In 2022, he fell behind on his property taxes, owing $2,728.08. Starting in March 2024, the Delaware County Tax Bureau sent a series of notices warning that his property was at risk of an upset tax sale because of his delinquency. *See Hartley v. Delaware Cnty. Tax Claim Bureau* et. al, Civ. No. 2024-9038, Order dated June 12, 2025 (ECF No. 39-1 at 2-3).

On September 5, 2024, the Court Of Common Pleas for Delaware County granted a Petition For Sale Of Occupied Property. That Order allowed the Tax Bureau to sell the property without providing Mr. Hartley personal notice as the owner-occupant. On September 19, 2024, the Bureau sold Mr. Hartley's house at an upset tax sale. It sold for $220,000, and Merrick Neumann was the winning bidder.

On October 4, 2024, Mr. Hartley tried to pay the back taxes to redeem his property, but the Tax Bureau refused, telling him the property had already sold. On October 16, 2024, he filed a Petition To Set Aside Tax Sale in the Court Of Common Pleas, though the court did not docket it until October 31. He argued that (a) the Bureau failed to give him proper notice of the upset tax sale and (b) under the Pennsylvania Real Estate Tax Sales Law ("RETSL"), 72 P.S. § 5860.101, he attempted to object to the sale by tendering the full

amount of delinquent taxes owed and that he had a right to redeem his property within 30 days following the sale of the property at the upset tax sale.

Mr. Hartley tried again to redeem his house on December 5, 2024. The Tax Bureau again refused, explaining that redemption was no longer on the table.

### 2.    State court proceedings

The Court Of Common Pleas held a hearing on Mr. Hartley's Petition on April 29, 2025. The Tax Bureau, Mr. Hartley, and Mr. Neumann all appeared. On June 12, 2025, the Common Pleas Court denied Mr. Hartley's Petition. The court explained that when a property owner challenges an upset tax sale on notice grounds, the tax claim bureau bears the burden to prove strict compliance with the statutory notice of the provisions of the RETSL. The court held that under the RETSL, the Bureau had to undertake reasonable efforts to locate all property owners and provide notice by publication at least 30 days before the sale, notification by certified mail at least 30 days before the sale, and by posting the property at least 10 days before the sale. In analyzing the Tax Bureau's actions, the court found that the Bureau had checked every box that the RETSL required: a certified mail return and claim notice signed on March 18, 2024; another certified mail notice of public sale that Mr. Hartley apparently signed on July 16, 2024; a sheriff's posting of the notice on Mr. Hartley's front door on August 15, 2024; a final notice by regular mail on August 19, 2024, which the Postal Service did not return; and three newspaper publications form August 14-16, 2024. All occurred more than 30 days before the sale.

The Common Pleas Court also rejected Mr. Hartley's other arguments. He argued at the hearing that he had 30 days after the sale to redeem, but the court held that the RETSL does not allow a right of redemption once an upset tax sale is held. In addition, the court held that Mr. Hartley waived other arguments that he made in his Petition but about which he did not argue or present evidence at the hearing, including the large gap between the tax owed and his property value. Mr. Hartley did not appeal. After the hearing, the Common Pleas Court concluded that the sale was valid and that title passed to Mr. Neumann.

### B.    Procedural History

On June 13, 2025, one day after the Court Of Common Pleas denied his Petition, Mr. Hartley filed this *pro se* action against Delaware County, the Bureau, and Janine Heinlein, the Tax Bureau's Upset Tax Sale Coordinator. He amended his Complaint on June 19, 2025. He also filed a Motion For Preliminary Injunction, which I denied on July 7, 2025. With leave, he filed a Second Amended Complaint ("SAC") on July 8, 2025.

In his SAC, he alleges that the notice he received prior to the upset tax sale was constitutionally deficient and that the denial of payment during the 30-day statutory objection period (following the upset tax sale) violated his due process rights and constituted an unlawful taking, particularly given the gross disparity between the value of the property and the amount of his delinquent taxes. He asserts a *Monell* claim, contending that the County's refusal to accept his tendered payment before the 30-day

4

statutory objection period expired created an administrative barrier and that the County's policies, practices, and customs deprived him of due process. He also raises state law claims for intentional infliction of emotional distress, unjust enrichment, conversion, and violations of the Pennsylvania Constitution because of the upset tax sale. He has also renewed his motion for preliminary injunction, asking me to enjoin the County from transferring the deed and title of the property. On August 2, 2025, he moved for default judgment, which I denied.

On September 2, the County Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). They attached the Court of Common Pleas Order dated June 12, 2025, as an exhibit to their motion. The motions are fully briefed and ripe for decision.

## II.    LEGAL STANDARD

If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exist[s]." *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019). Parties may raise the issue of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

A court may treat a motion under Rule 12(b)(1) "as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). For a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in

the light most favorable to the plaintiff." *Id.* "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)[.]" *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Where, as here, a movant files a motion to dismiss before it files any answer to the Complaint or otherwise presents competing facts, its motion is "by definition, a facial attack." *Id.*

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790. In considering a motion to dismiss, a court may also take judicial

notice of matters of public record, such as state court proceedings. *See Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016).

Courts must construe *pro se* complaints liberally. *See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011)*. In doing so, however, courts "may not rewrite a plaintiff's allegations." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 309 (3d Cir. 2003).

## III.   ANALYSIS

### A.   *Rooker-Feldman*

Federal courts are not appellate courts for disappointed state court litigants. The *Rooker-Feldman* doctrine precludes federal courts from entertaining "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine bars a claim that was "actually litigated in a state court prior to the filing of the federal action" or is "inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A federal claim is "inextricably intertwined" with an issue adjudicated by a state court when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

The *Rooker-Feldman* doctrine applies when: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021) (quotation omitted). Courts characterize the second and fourth factors as substantive and the first and third as procedural. *See Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023). "The procedural posture is rarely at issue." *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, Civ. A. No. 15-6186, 2016 WL 2897470, at * 3 (E.D. Pa. May 17, 2016) (citing *Hoblock v. Albany Cnty. Bd. Of Elec.*, 422 F.3d 77, 85 (2d Cir. 2005)). The substantive factors, by contrast, are usually "key to determining whether a federal suit presents an independent, non-barred claim". *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

As with most cases, the procedural factors are not at issue in this case. Mr. Hartley pursued his rights in state court by petitioning the Common Pleas Court to set aside the tax sale of his home, but he was unsuccessful. The Common Pleas Court Judgment was entered the day before he filed this action.

As for the substantive factors, they both reveal that the *Rooker-Feldman* doctrine applies. For the second factor, the question is whether Mr. Hartley suffered injuries as a result of Defendants' conduct or as a result of the state court's decision. *See Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010). In making

that determination, I can look beyond Mr. Hartley's characterization of his claims to discern whether an injury is one that the state court decision produced or whether the state court judgment just ratified, acquiesced in, or left unpunished a harm. *See id.* at 167. The harm that Mr. Hartley suffered is the loss of his home. That occurred as a result of the state court's decision. It held that Mr. Hartley received the notice that the RETSL required and that the RETSL did not afford Mr. Hartley a post-sale redemption right. (ECF No. 39-1 at 4-6.) Thus, the Common Pleas Court didn't just let the upset sale happen; it authorized it and therefore caused the harm about which Mr. Hartley complains.

For the fourth factor, I have to determine whether the relief that Mr. Hartley seeks would require me to "effectively reverse the state decision or void its ruling." *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (citation omitted). It does. The only way for me to grant Mr. Hartley relief is to conclude that the state court approved an upset sale that violated Mr. Hartley's rights. Mr. Hartley's lawsuit is, at its core, an effort to relitigate and overturn the adverse decision of the Common Pleas Court. The relief he seeks confirms this point: he's asked me to "[g]rant equitable relief in the form of an order reversing the order that denied [him] relief to set aside tax sale, and allow [him] to redeem [the] property." (ECF No. 13, at 21.)

Mr. Hartley tries to avoid this outcome by arguing that he's now advancing different legal theories than he did in state court. That doesn't matter, though, for several reasons. *First*, the Common Pleas Court already recognized that Mr. Hartley had waived

some of the arguments he asserted in his Petition by failing to press them or provide evidence. (ECF No. 39-1 at 2 n.1.) So, to the extent Mr. Hartley seeks to advance them, he is asking me to undo the state court's procedural ruling. *Second*, and more fundamentally, presenting a new theory in federal court does not allow a plaintiff to bypass *Rooker-Feldman*. I'm persuaded by the reasoning of the Second Circuit, which has held that "[j]ust presenting in federal court a legal theory not raised in state court ... cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have the state-court judgment reversed." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). *Third*, to the extent that Mr. Hartley claims that the state court proceedings themselves violated his due process rights, that argument cannot save him. His remedy to a flawed state court proceeding is an appeal, not a federal lawsuit. There is no way that I could evaluate his due process claims without questioning and potentially undoing the Common Pleas Court's decision.[1]

### B.    State Law Claims

Having dismissed Mr. Hartley's federal claims, there is no jurisdictional basis for this Court to hear his state law claims. I will not exercise the Court's supplemental

---

[1] Mr. Hartley's federal claims fall squarely within *Rooker-Feldman*, and I therefore lack subject-matter jurisdiction to hear them. Because *Rooker-Feldman* provides a clear bar, I need not reach the separate question of whether jurisdiction might be barred under the Tax Injunction Act or whether Mr. Hartley has failed to state a claim upon which relief can be granted under Rule 12(b)(6).

jurisdiction because the case is in its infancy and there is no efficiency to be gained by having those claims remain in federal court. 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

Nor is there an independent jurisdictional basis for the claims to be in this Court. They do not arise under federal law. *See* 28 U.S.C. § 1331. It appears from the Complaint that both Mr. Hartley and the defendants are Pennsylvania citizens. Therefore, there is not complete diversity of citizenship among the parties. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). Even if there were a jurisdictional basis for the claims to remain in this Court, the state law claims are inextricably intertwined with the state court judgment regarding the tax sale. Resolving them would require me to revisit and negate the state court's ruling, so *Rooker-Feldman* bars my jurisdiction over those claims as well. I will therefore dismiss the state law claims without prejudice because I am not addressing them on the merits.

## IV.    CONCLUSION

I can't sit in judgment of a state court decision, but that's what Mr. Hartley's claim asks me to do. Because this Court doesn't have subject matter jurisdiction to hear his claims, I will dismiss them. I will do so without prejudice, but I will not grant Mr. Hartley leave to file an Amended Complaint because there do not appear to be additional facts that he could plead to cure the jurisdictional flaws. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

October 23, 2025